IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| H.H., an individual, | : | Case No.: 2:19-cv-00755 |
| | : | Judge Algenon L. Marbley |
| | : | Magistrate Judge Elizabeth Preston |
| | : | Deavers |
| **Plaintiff,** | : | |
| | : | |
| --vs.-- | : | |
| | : | |
| G6 HOSPITALITY, LLC, et al., | : | |
| | : | |
| **Defendants.** | : | |

**MOTION OF DEFENDANT NORTHLAND HOTEL, INC., TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 10(a), 12(b)(2) AND 12(b)(6)**

Now comes Defendant Northland Hotel, Inc., ("Northland Hotel" or "Northland" or "Defendant"), by and through the undersigned counsel, and hereby moves the Court for an Order dismissing this action pursuant to Rules 10(a), 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. This Motion is supported by the accompanying Memorandum, below, and herein incorporated.

Respectfully submitted,

JOSEPH L. PICCIN CO., LLC

*/s/ Joseph L. Piccin*
JOSEPH L. PICCIN
Ohio Bar Reg. No. 0072553
3010 Hayden Road
Columbus, OH  43235
Tel.: 614-659-9616
Fax: 614-798-1935
Mobile: 614-354-1099
E-mail: JLP@joepiccin.com
**Lead Trial Counsel for Defendant
Northland Hotel, Inc.**

1

**MEMORANDUM IN SUPPORT**

**I. Introduction**

This case draws upon a societal problem. Taking the allegations in the Complaint as true, any reader who is not a criminal or otherwise deprave would properly classify the Plaintiff as a victim. As an unnamed party, the Plaintiff seeks to impose liability on hotels who operate their businesses in a climate of increasing concerns of both crime, on the one hand, and rights of guests to privacy, on the other. Hotel operators are held to account for falling short in achieving compliance with these delicate, though important standards. The Complaint filed herein, however, should not be allowed to proceed, predominantly because it does not allege facts to establish that any of the defendant hotel operators participated to a sufficiently active degree while having the requisite level of knowledge of wrongdoing in relation to the true malefactor described in the Complaint, that being Plaintiff's captor.

Dismissal is warranted, first, because Plaintiff has neither disclosed her name and other identifying information, nor has Plaintiff sought proper permission to proceed anonymously or by using a pseudonym. While the facts alleged are certainly intimate and perhaps deserving of appropriate concealment, Defendant is left with scarce information to plead in response to, much less defend the case. The Complaint does not even name Plaintiff's captor. Importantly, precedent instructs that the Court does not possess jurisdiction over Plaintiff as a presently unnamed party to this action, as she is still remaining pseudonymously, and the Complaint must be dismissed.

Second, the Complaint does not contain legally adequate information from which to infer that Defendant Northland Hotel., Inc. "participated in a venture" with Plaintiff's captor whereby the hotel defendant "knew or should have known" that the Plaintiff's captor was committing crimes against persons and that the Plaintiff was a victim.

Third, in taking the allegations in the Complaint as true, and even if we assume that the sole pending federal claim is informed by other legal principles such as tort law jurisprudence, the allegations do not contain plausible information from which to discern which of this hotel Defendant's guests were committing any crimes or wrongful acts, as the Plaintiff's captor is not named.  The Complaint does not adequately describe Defendant's employees to determine whether and the extent to which they were derelict in any investigatory or reporting duties, and the allegations fall short of required pleading standards.

Fourth, the Complaint fails to recognize that while hotels owe reasonable duties and standards of care to all guests, they are not complete insurers of guest safety.  Hotel management owes all guests a right of privacy, and even with the adoption and implementation of proper security mechanisms, wrongdoing may occur.  The fact that such unwanted events do, at times, transpire on a hotel's property does not mean that its management participated in a venture with any wrongdoer.

Fifth and finally, the Complaint seeks to impose liability, in an overly broad manner, upon business entities that are distinct in their operations and not interrelated with one another.  There is no allegation of sufficient cooperation or combined participation to impose joint and several liability upon the named defendants.

These reasons, further illustrated below, mandate dismissal of this action.

## II. Reviewing Standard

When addressing a motion to dismiss under Rule 12(b)(6), well-pleaded allegations in a complaint must be accepted as true, and a complaint must state a plausible claim for relief on its face.  *See, e.g., Bell Atl. Corp. v. Twombly* (2007), 550 U.S. 544, 570; *Ashcroft v. Iqbal* (2009), 556 U.S. 662; *see also Savoie v. Martin* (6th Cir. 2012), 673 F.3d 488, 492.  The allegations in

Plaintiff's Complaint are disturbing, yet, the specific contents of the Complaint relative to Northland Hotel as a Defendant, when read in light of existing law, mandate that the Complaint be dismissed.

### III. Law and Argument

    **A. Plaintiff's anonymity, and failure to name her trafficker mandate dismissal.**

In the Complaint, the Plaintiff identifies herself as "H.H." and does not reveal an address, other than to state that she resides in Ohio. *See* Complaint at ¶9. Plaintiff is thus, in function, proceeding by use of a pseudonym or under anonymity.[1] Somewhat recently, in *Citizens for a Strong Ohio v. Marsh* (6th Cir. 2005), 123 Fed.Appx. 630, the United States Sixth Circuit Court of Appeals commented upon parties proceeding anonymously in litigation:

> Ordinarily, a plaintiff wishing to proceed anonymously files a protective order that allows him or her to proceed under a pseudonym. In this case, however, the docket sheet does not reflect any motion or proceeding dealing with whether the [] anonymous plaintiff[] could proceed under [a] pseudonym[]. Failure to seek permission to proceed under a pseudonym ***is fatal*** to an anonymous plaintiff's case, because, as the Tenth Circuit has held, "***the federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them***." Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs, 886 F.2d 1240, 1245 (10th Cir. 1989). Accordingly, the district court did not err in dismissing John Doe.

*Marsh*, 123 Fed.Appx. 630, 636-637 (internal citation and page number, and paragraph break omitted; emphasis added). In this case, like *Marsh*, the docket sheet does not reveal any motion or request in which Plaintiff seeks to proceed using only her initials.

    Prior to noting that a failure to seek permission by way of motion is fatal to a complaint,

---

[1] *A.G. v. Unum Life Ins. Co. of America* (D. Ore.), 2018 U.S. Dist. LEXIS 24752 is a recent case where the Oregon District Court examined tests used by federal circuits addressing the right of a party to proceed in anonymity or pseudonymously. There, the plaintiff was proceeding using only initials and the Court granted a defendant's motion to compel Plaintiff to indicate a full name. Here, Defendant seeks dismissal of the Complaint for the reasons herein stated, and not (at this point) any compulsory disclosure of Plaintiff's full name.

the Sixth Circuit appellate court in *Marsh* examined past circumstances where it was proper for a plaintiff to proceed using a pseudonym or anonymously. Importantly, in general a complaint must name the parties and pseudonyms are to be used "only under certain circumstances that justify an exception to this rule." *Id.*, citing *Doe v. Porter* (6th Cir. 2004), 370 F.3d 558, 560; *see also*, Civ.R. 10(a) ("[t]he title of the complaint must name all the parties[.]") Among factors for consideration of an exception to apply are: (1) whether the plaintiffs seeking anonymity are suing to challenge governmental activity [the answer to this inquiry here is 'no.']; (2) whether prosecution of the suit will compel the plaintiff to disclose information "of the utmost intimacy" [Defendant Northland Hotel will concede that allegations in the Complaint are intimate relative to the unnamed Plaintiff]; (3) whether the litigation compels plaintiffs to disclose an intention to violate the law, thereby risking criminal prosecution [the answer to this inquiry here is 'no.']; and (4) whether the plaintiff is a minor child [the answer to this inquiry here is 'no,' as Plaintiff is "an individual over the age of nineteen (19) years…" Compl. at ¶9]. Finally, and particularly applicable to the Complaint in this matter, "[i]t is also relevant to consider whether the defendants are being forced to proceed with insufficient information to present their arguments against the plaintiff's case. *Id*. at 636.

A quick application of three of these factors to the Complaint herein shows that there is no challenge to government activity (the ***first*** factor); rather, the Complaint explains government activity designed to eradicate crime, and challenges an alleged failure of private actors to diminish crime upon commercial premises.[2] Prosecuting the action should in no way compel the Plaintiff to violate any law (the ***third*** factor), as the Complaint describes the Plaintiff as being a victim, and not a perpetrator, of crime, and the Complaint certainly does not allege that Plaintiff intends to commit a future criminal act. *See* Complaint at ¶44, 46. The Plaintiff is not a minor child (the

---

[2] Plaintiff's life is alleged to have been "adversely affected by the hospitality industry's inattention to the prevention and eradication of sex trafficking." Complaint at ¶43.

5

*fourth* factor).  *See* Complaint at ¶9.

As for the ***second*** anonymity factor listed in the Sixth Circuit *Marsh* and *Porter* decisions, any reader of the Complaint can conclude that the Complaint's allegations, assuming their truth, describe intimate, and in fact atrocious, details.  There have, however, been other cases where Plaintiffs have proceeded under the federal statute utilized here, the civil remedy provision of the Trafficking Victims Protection and Reauthorization Act of 2008, 18 U.S.C. § 1595 ("TVPRA").[3] Defendant is not so insensitive as to suggest, simply, that if some party to another action chooses to reveal her name along with certain intimate details of her life, that the Plaintiff herein must do so.  Yet, Defendant does wish to highlight the difficulties in addressing the Complaint, on its face, where Plaintiff reveals only her initials, thereby preventing an effective check of Defendant's past guest registry, to the extent such records may exist, to examine the plausibility of the allegations. Defendants are thus "…being forced to proceed with insufficient information to present their arguments against the plaintiff's case."  *Marsh* at 636.  The Complaint does not even reveal the name of Plaintiff's trafficker, thereby further preventing an effective review of Defendant's guest registry to assess Plaintiff's contentions.  The Complaint does not permit Defendant to fully investigate the truth or falsity of the specific allegations.  This second factor - revelation of matters of intimacy - is the only factor that weighs in favor of Plaintiff proceeding anonymously or pseudonymously in this case.  Plaintiff has not, however, followed the ordinary procedure for proceeding anonymously or through use of a pseudonym.  Failure to do so is fatal to an anonymous plaintiff's case, according to Sixth Circuit case law.  The Complaint should be dismissed.

---

[3] *See, e.g., Ditullio v. Boehm* (9th Cir. 2011), 662 F.3d 1091; *Ricchio v. McLean* (1st Cir. 2017), 853 F.3d 553.

6

**B. The Complaint does not plausibly allege that Defendant Northland Hotel participated in a venture with Plaintiff's captor.**

The operative text of the TVPRA, the statute under which Plaintiff is proceeding with her one count in the Complaint, provides that a victim of human trafficking "may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act [of human trafficking])." 18 U.S.C. § 1595(a). To trigger any liability under this provision upon a defendant such as a hotel, then, the hotel must have 1) knowingly received anything of value, that 2) resulted from its participation in a venture, whereby 3) the hotel knew or should have known that a captor was engaged in the criminal act of human trafficking.

The Complaint alleges that hotel defendants "failed to protect the Plaintiff" and did not "prevent human trafficking" and "knowingly continued to profit from the sex trafficking venture operating out of their hotels." Complaint at ¶46. What these contentions fail to recognize is that hotels receive room rents from every guest, regardless of the guest's purpose for staying at a hotel. Room rentals are available to nearly all members of the consuming public, unless a hotel has legitimate reason for refusing to allow a person on its premises or denying service. So, while room rental revenues are certainly a financial benefit or a thing of value, to qualify as actionable under the TVPRA, these payments must necessarily flow from the hotel's participation in a venture with a captor of an individual. The Complaint does not plausibly support such a conclusion.

Complaints require more than couched legal conclusions disguised as factual allegations. *See Fritz v. Charter Twp. of Comstock* (6th Cir. 2010), 592 F.3d 718, 722. A recitation of the elements of a cause of action are insufficient to withstand a motion to dismiss. *Id.*, quoting *Hensley Mfg. v. ProPride* (6th Cir. 2009), 579 F.3d 603, 609. In *Ricchio v. McLean* (1st Cir. 2017), 853 F.3d 553, the Court of Appeals for the First Circuit reversed a district court order dismissing a

7

claim brought against a hotel under the TVPRA.  There, while the complaint described horrible facts, there was an allegation that the plaintiff's captor (whose name was contained in the record) enticed the plaintiff to travel across state lines and held her captive against her will, and, generally, committed terrible acts against her.  Plaintiff's captor, in that case, also had prior commercial dealings with the hotel operators, and the captor and hotel operator "exchang[ed] high-fives in the parking lot while talking about 'getting this thing going again.'"  853 F.3d at 555.  Nothing in the Complaint in *this* case allows for a conclusion that the Defendant hotel or its staff actively participated to such a degree to support Plaintiff's captivity.  It bears repeating that the Complaint does not even name Plaintiff's alleged captor.

The Complaint contains bald legal conclusions, not plausible legal claims.  *See, e.g.*, Complaint at ¶46 (Defendants' staff should have recognized "obvious signs of human trafficking" and Defendants "knowingly continued to profit from the sex trafficking of Plaintiff by harboring or otherwise facilitating the sex trafficking venture operating out of their hotels.").  Even one of the most horrific allegations, contained in paragraph 48 of the Complaint, does not attempt to give a specific time when a Super 8 housekeeping staff member is alleged to have discovered Plaintiff "chained up in the bathroom" and a reader is left to deduce that this occurred from approximately March of 2015 until October 2015, when the Plaintiff was alleged to have been "repeatedly trafficked for sex" between two hotels.  Complaint at ¶45.

What can be deduced from the Complaint, assuming the truth of the allegations, is that hotel staff members failed to undertake certain actions that could have protected the Plaintiff.  These contentions are not, however, legally cognizable in the context of this case.

**1. Plaintiff's request for damages is untenable, and not plausibly pled.**

Even if the Court were to consult state law jurisprudence from tort cases to gauge the hotel defendants' purported degree of fault, the Complaint still fails. Generally, when one realizes or should realize that action on their part is necessary for another's aid or protection, such realization does not, of itself, impose a duty to undertake any action. This statement is a near verbatim recitation of the Restatement (Second) of the Law of Torts, § 314. In other words, tort law imposes no duty to act for the protection of others except in special circumstances. The United States Court of Appeals for the Sixth Circuit has acknowledged that "[i]t is a fundamental rule of American tort law that 'the fact that [an] actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action.'" *Myers v. U.S.* (6th Cir. 1994), 17 F.3d 890, 901, citing Restatement § 314. The Restatement (Second) of the Law of Torts provides certain exceptions for duties imposed upon certain business operations, including that of innkeepers. *See, e.g., Mackey v. U. S.* (6th Cir. 2007), 247 Fed.Appx. 641, 646 (analyzing an employer's duty to warn under Kentucky, not Ohio, law). This duty consists of protecting guests against unreasonable risk of physical harm, and providing first aid after knowledge or reason to know that a guest is ill or injured, and, "to care for them until they can be cared for by others." Restatement (Second) of the Law of Torts, § 314A(2). Ohio's Supreme Court has adopted sections 314 and 315 of the Restatement (Second) of the Law of Torts. *See, e.g., Gelbman v. Second Nat'l Bank* (1984), 9 Ohio St.3d 77, 79; also acknowledged in *Desir v. Mallett* (10th Dist.), 2015-Ohio-2124, at ¶22.[4]

---

[4] While there is a Third Restatement of the Law of Torts, entitled Liability for Physical and Emotional Harm, "the Supreme Court of Ohio has not adopted any of its provisions." *Martin v. Lambert* (4th Dist.) 2014-Ohio-715, at fn. 2, citing *Anderson v. Massillon*, Sup.Ct.Oh., 2012-Ohio-5711.

An examination of Ohio case law reveals, however, that hotel staff be acutely aware of danger posed to guests in order for liability to result.  "Absent proof of a [hotel] defendant's subjective knowledge of danger posed to another, a punitive damages claim against that defendant premised on the 'conscious disregard' theory of malice is not warranted." *Malone v. Courtyard by Marriott* (Sup.Ct.Oh. 1996), 74 Ohio St.3d 440, at the syllabus.  The facts presented in the *Malone* case were quite troubling, consisting of calls to the front desk by hotel guests requesting the attendant "to send security guard[s] up because [people] were fighting and making a lot of noise" and a specific request to "send someone up." *Id*. at 444.  The front desk was also informed that "now the girl is screaming in the hallway for help." *Id*. at 443.  The Supreme Court of Ohio nonetheless determined that the information provided hotel employees "was too ambiguous." *Id*. at 446.  The hotel must have "actually known of the threat to its guests[,]" "through its agents." *Id*.  The court then decided that the trial court's directed verdict in favor of the hotel defendant, without a jury instruction on punitive damages, was proper. *Id*.  The court went on to acknowledge that even if punitive damages were warranted in that case, they were not recoverable by the plaintiff because a jury had not awarded her any compensatory damages. *Id*. at 447.

Here, in reading what are the most direct allegations against Defendant Northland in the Complaint – a housekeeping staff member discovering Plaintiff "chained up in the bathroom" of a hotel room (Complaint at ¶48) – one must guess to discern many important details.  The Plaintiff has not revealed her full name.  The Plaintiff does not provide the name of her trafficker.  The Complaint provides only a range of days, spanning eight months, when this event occurred.  The Complaint does not say what Plaintiff said to the staff member, and only depicts "desperate pleas for help."  These allegations fall short of plausibly demonstrating that Defendant, as a hotel

10

operator, actually knew through its agents that a guest was in threat of danger. *Cf. Malone*, at 446, and at the syllabus.

At most, the Complaint can be fairly said to allege that some unnamed people stayed at this hotel about four years ago, sporadically, and for about an eight-month period of time, some really bad things happened. These allegations fall short of the plausibility standard required of pleadings since the United States Supreme Court decisions in *Twombly* and *Iqbal*. Cases from this federal District have acknowledged the Sixth Circuit's application of *Twombly* / *Iqbal* plausibility standard and have stated:

> In sum, on the plausibility issue, the factual allegations in the complaint need to be sufficient 'to give notice to the defendant as to what claims are alleged, and **the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible**.' *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Iqbal,* 129 S. Ct. at 1949-50). Further, 'a legal conclusion [may not be] couched as a factual allegation' and mere "recitations of the elements of a cause of action" are insufficient to withstand a motion to dismiss. *Id.* (quoting *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)).

*White v. Chase Bank U.S.A., N.A.* (S.D.Oh., Rice, J.), 2010 U.S. Dist. LEXIS 102908, at *10 (emphasis added), cited in *Apex Tool Group, LLC v. DMTCO, LLC*, (S.D.Oh.) 2014 U.S. Dist. LEXIS 158032, at *8. With this Complaint, we have only the mere possibility of a hotel defendant's liability, or, more precisely, potential liability of a staff member. No names are given, and only a vague reference that Plaintiff's unnamed captor was "registered as a guest" at the Super 8 Columbus. Complaint at ¶11.c. A mere possibility of liability is not sufficient to permit Plaintiff to state any claim for damages, compensatory or punitive.

11

### a. Hotels are not absolute insurers of guests' safety.

The Supreme Court of Ohio's holding in *Malone* is consistent with the State's prior appellate case law. In *Meyers v. Ramada Inn of Columbus* (10th Dist. 1984), 14 Ohio App.3d 311, Ohio's Tenth District Court of Appeals stated the following as syllabus law:

> 1. The mere fact that there may be some subjective concerns about an individual seen frequenting a motel's public areas on the part of the manager of the motel does not give rise to an additional duty to a patron of the motel to provide further security measures to protect against some speculative possibility of wrongful action by that person towards a guest of the motel.
>
> 2. A motel must conform to a standard of ordinary care in providing security for its guests. If there are special circumstances such as previous assaults in the motel or that the motel is located in a high crime area, ordinary care may require additional security measures.

*Id*. The Complaint does not allege that the hotel Defendant in this case did not employ appropriate security measures. Only a broad and general references are made to the hotel industry, and a contention that "[w]ith proper training and other reasonable security measures, hotel owners and operators *could* prevent the trafficking of persons on their properties." Complaint at ¶30 (emphasis added). As *Twombly* and *Iqbal* provide, possibility is not the same as plausibility. The Complaint, as directed towards this hotel Defendant, does not state a plausible claim, as "…an innkeeper is not an insurer of the safety of its patrons." *Meyers*, above, 14 Ohio App.3d at 313. Here, we know not whether the pseudonymous Plaintiff was ever a registered guest at Defendant's hotel premises, or if she was simply a 'guest of a registered guest,' i.e., her alleged and unnamed trafficker. The Plaintiff is alleged to have been "routinely escorted by her trafficker to the front desk to hand deliver cash payments for the reserved room out of which the sex trafficking venture operated." Complaint at ¶46. The Complaint states further, in conclusory fashion, that "[t]he indicia of human trafficking were open and obvious[,]" to which the defendant hotels were "willfully blind." *Id*.

These statements are nothing more than "legal conclusions couched as factual allegations," *cf. Iqbal* at 1949-1950, and a court is not bound to accept them as true. *Id*.

### b. Hotel guests are entitled to certain privacy rights.

The Complaint concludes, and does not adequately explain how or why, any signs of human trafficking were open and obvious.  The Complaint then scorns "hotels and hotel brands that do not identify and report evidence of human trafficking on hotel properties…" Complaint at ¶41.  Instances of crime may be reported, however, with no assurance that a response would have immediately liberated someone in Plaintiff's alleged situation.  "[A] guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures.  That protection would disappear if it were left to depend upon the unfettered discretion of an employee of the hotel." *Stoner v. California* (1964), 346 U.S. 483, 490 (internal citation omitted).  Also, "when a person engages a hotel room [such person] undoubtedly gives implied or express permission to such persons as maids, janitors or repairmen to enter [the] room in the performance of their duties." *Id*. at 489 (internal quotations omitted).  Yet, hotel employees are not police officers, and are not vested with authority to arrest alleged wrongdoers.  Hotel staff must inform police to address crime on the premises, and generally, law enforcement must obtain a search warrant to enter an occupied hotel room.  *See U.S. v. Lewis* (6th Cir. 2015), 615 Fed.Appx. 332, at * 338, quoting *U.S. v. Lanier* (6th Cir. 2011), 636 F.3d 228, 231  ("[w]ithout question, 'a hotel room may be the object of Fourth Amendment protection as much as a home or an office.'").  Nothing in the Complaint informs a belief that hotel defendants mentioned did not notify law enforcement of suspected illegal activity.  In fact, the Complaint contains allegations of increased presence at Defendant Northland Hotel's Super 8 property.  *See, e.g.*, Complaint at ¶160a.-d.  Police could have to investigate for some time prior to making an arrest for prostitution or human trafficking.

Increased police presence at a hotel property serves to demonstrate that hotel managers are not "in a venture" with its guests when guests commit crimes. *Cf.* 18 U.S.C. §1595. As stated above, hotels are open to the consuming public. So long as a patron presents with ability to pay for a room, and assuming the hotel has no legitimate reason to refuse service, that patron may rent a room. That is the extent of the "venture" from the hotel's standpoint, regardless of the guest's reason for renting the room. Plaintiff's trafficker may have possessed mal intent, but from the hotel's standpoint, the relationship with its guests is benign. In this Complaint, there are no allegations that any of the hotel defendants rented rooms for the express purposes of trafficking Plaintiff H.H. *Cf. Ricchio*, above (no allegation herein that defendant hotel operator "high-fived" Plaintiff's captor "about getting this thing going again."). All that is known, from the Complaint, is that "[an] individual * * * trafficked H.H. at the Super 8 Columbus while [he] was registered as a guest there[,]" Complaint at ¶11.c., and Plaintiff "…escaped her trafficker while at the Defendant Super 8 Columbus…" Complaint at ¶50. As the Supreme Court of the United States has recognized, "[h]otels – like practically all commercial premises or services – can be put to use for nefarious ends. But unlike [closely regulated industries,] hotels are not intrinsically dangerous." *City of Los Angeles v. Patel* (2015), 135 S.Ct. 2443, at note 5. The fact that Plaintiff's captor may have intended to use a hotel room for a criminal purpose does not, therefore, mean that the hotel "ventured" with him relative to that purpose, under the meaning of the TVPRA.

### c. Plaintiff's request for liability is too broad.

The Complaint contains one count, that being a civil cause of action under the TVPRA. *See* Complaint at 43, ¶¶168-172. In her prayer for relief, Plaintiff requests a favorable jury verdict "against each and every Defendant, jointly and severally….." and for damages. *Id*., at 44. The text of the TVPRA, 15 U.S.C. §1595, does not provide for joint and several liability. While certain

of the named Defendants have a franchisor-franchisee relationship, i.e. G6 Hospitality, LLC, (a franchisor) and Shahil, LLC (a franchisee), respectively, and Wyndham Hotels and Resorts, Inc., (a franchisor) and Northland Hotel, Inc. (a franchisee), respectively, nothing supports the contention that G6 Hospitality and Shahil, issuing and doing business under the Motel 6 brand, on the one hand, participated in any venture with Wyndham and Northland, issuing and doing business under the Super 8 brand, on the other, or vice versa. All that is alleged, specifically as it pertains to the Plaintiff, is that her unnamed captor was registered as a guest at these hotel properties, and she was trafficked between two hotel locations. *See* Complaint at ¶¶9.c and 11.c, ¶¶45-50. None of these business defendants in this context are responsible for acts occurring on properties not owned or managed by them. Northland Hotel, Inc., as a Defendant, thus cannot be liable for occurrences at co-Defendant Shahil, LLC's property, and vice-versa; nor can these hotels' franchisors. *Cf. Nitsche v. Stein* (N.D.Oh. 1992), 797 F.Supp. 595, 601-602 (striking improper portion of prayer for relief in complaint seeking joint and several liability); *United States S.E.C. v. Sierra Brokerage Svcs*. (S.D.Oh.2009), 608 F.Supp.2d 923, 968 (finding joint and several liability, only where appropriate, with defendants having a 'close relationship.').

An allegation against a business that describes something wrong happening at a place owned and controlled by another business altogether cannot result in any liability, much less joint and several liability. Plaintiff's demand for relief should at least be pared to reflect this principle, and for the reasons set forth above, the Complaint cannot proceed, and should be dismissed.

## IV. Conclusion

Plaintiff may undoubtedly be a victim of human trafficking, and mistreatment. The person truly responsible for these horrible events is Plaintiff's captor. The TVPRA also imposes liability upon those who knowingly benefited from participating in a venture with persons such as

Plaintiff's captor.  That her captor saw fit to victimize Plaintiff at Defendant's hotel does not automatically impose liability upon the hotel for "participation" in a criminal's "venture."  This Complaint does not name persons and therefore cannot be read to plausibly state that Defendant knew or should have known that Plaintiff's captor was violating human trafficking statutes.  The Complaint also seeks to encompass unrelated entities as jointly and severally liable, without specific allegation of any joint knowledge or participation of the other.

For these reasons and those stated above, the Complaint should be dismissed.

Respectfully submitted,

JOSEPH L. PICCIN CO., LLC

*/s/ Joseph L. Piccin*
JOSEPH L. PICCIN
Ohio Bar Reg. No. 0072553
3010 Hayden Road
Columbus, OH  43235
Tel.:  614-659-9616
Fax:  614-798-1935
Mobile:  614-354-1099
E-mail:  JLP@joepiccin.com
**Lead Trial Counsel for Defendant
   Northland Hotel, Inc.**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing Motion to Dismiss was uploaded for electronic filing through the Court's Electronic Case Filing System (CM/ECF), and Notice will thus be sent to all registered parties, per Civil Rule 5(b)(2)(E), on this 6th day of May, 2019.

*/s/ Joseph L. Piccin*
JOSEPH L. PICCIN
Ohio Bar Reg. No. 0072553
**Lead Trial Counsel for Defendant
   Northland Hotel, Inc.**