IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| H.H, : | |
| : | Case No. 2:19-CV-755 |
| Plaintiff, : | |
| : | JUDGE ALGENON L. MARBLEY |
| v. : | |
| : | Magistrate Judge Deavers |
| G6 HOSPITALITY, LLC, *et al.*, : | |
| : | |
| : | |
| Defendants. : | |

## OPINION & ORDER

This matter is before the Court on Defendants', G6 Hospitality, LLC, Wyndham Hotels & Resorts, Inc., Shahil, LLC, and Northland Hotel, Inc., Motions to Dismiss. (ECF Nos. 29, 30, 21, 19). For the following reasons, Defendants' Motions are hereby **DENIED.**

## I. BACKGROUND

Plaintiff, H.H., alleges she was trafficked for sex from approximately March 2015 to October 2015 at Motel 6 and Super 8 hotel locations in Columbus. (ECF No. 1 at ¶ 45). Plaintiff now seeks to hold these hotels liable under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a).

Plaintiff alleges that these hotel Defendants knew that sex trafficking occurred frequently on their properties and failed to prevent it, and also that they knew or should have known of H.H.'s trafficking. Plaintiff points to behavior that she alleges hotel staff should have recognized as signs of her trafficking: "bottles of lubricants, boxes of condoms, excessive requests for towels and linens, cash payments," and physical signs of human trafficking including "branding, restraints, bruises, physical deterioration." (ECF No. 1 at ¶ 46). Plaintiff alleges that while she

1

was at each hotel property she "was routinely escorted by her trafficker to the front desk to hand deliver cash payments." (*Id.*). She also alleges that she was discovered by the hotel cleaning staff at the Motel 6 Columbus "tied to the guest room bed" and that "despite her desperate pleas for help, the staff ignored her." (*Id.* at ¶ 47). At the Super 8 Columbus, she similarly alleges housekeeping staff discovered her chained up in the bathroom and ignored her pleas for help. (*Id.* at ¶ 48). Plaintiff finally escaped in October of 2015. H.H. alleges that these hotels and their parent companies did not take adequate measures to prevent human trafficking and were "willfully blind to the indicia of human trafficking." (*Id.* at ¶ 46).

## II. STANDARD OF REVIEW

The Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). The Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). If more than one inference may be drawn from an allegation, the Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). The Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). Generally, a complaint must

contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### III. LAW & ANALYSIS

In its October 7, 2019 Opinion and Order in *M.A. v. Wyndham Hotels & Resorts, Inc.*, this Court undertook an extensive analysis in a related case of the Trafficking Victims Protection Reauthorization Act ("TVPRA") and its application to civil liability of hotel defendants for sex trafficking. *See M.A. v. Wyndham Hotels & Resorts, Inc.*, No. 2:19-cv-849, 2019 WL 4929297 (S.D. Ohio Oct. 7, 2019).

Like M.A., H.H. brings claims under 18 U.S.C. § 1595,[1] which sets forth the standard for civil liability under the TVPRA. This Court held in *M.A.* that § 1595(a) can be a standalone claim, and civil Defendants need not have committed the underlying criminal sex trafficking offense under § 1591. 2019 WL 4929297 at *2 (citing Cong. Research Serv., R40190, The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (P.L. 110-457): Criminal Law Provisions, at 16 (Jan. 29, 2009) (the amendments to the TVPA "create[]

---

[1] 18 U.S.C. § 1595(a) provides: "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees."

3

civil liability both for those who face criminal liability for their profiteering and those who do not."); *Plaintiff A v. Schair*, No. 2:11-cv-00145-WCO, 2014 U.S. Dist. LEXIS 197819, at *6 (N.D. Ga. Sept. 9, 2014) (the 2008 amendments broadened the parties who could be sued for trafficking violations from only the perpetrator to "anyone who 'knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter'")). This Court likewise finds that H.H.'s allegation that she is a victim of trafficking under § 1591 is enough sufficiently to plead that she is "a victim of this chapter" pursuant to § 1595(a) in order to survive a motion to dismiss.

## A. Civil Liability Under the TVPRA § 1595

The requirements for liability under § 1595(a) on a "beneficiary" theory can be stated as follows: (1) the person or entity must "knowingly benefit[], financially or by receiving anything of value," (2) from participating in a venture, (3) that the "person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

### *1. Knowing benefit*

Defendants contend that they did not knowingly benefit financially from the sex trafficking venture. Defendant Shahil argues that "knowing benefit" requires some kind of "causal relationship between the rental of a hotel room and the perpetrator's sex trafficking scheme." (ECF No. 21 at 12). But § 1595(a) imposes no such requirement. The statutory language requires that Defendant knowingly benefit financially, not that the perpetrator compensate Defendant "on account of" the sex trafficking. As discussed below, there is no actual knowledge requirement in § 1595 with respect to the sex trafficking venture. The first element merely requires that Defendant knowingly receive a financial benefit. As this Court

4

found in *M.A.*, "the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard." 2019 WL 4929297 at *3. *See also Gilbert v. United States Olympic Committee*, No. 18-cv-00981-CMA-MEH, 2019 WL 4727636, at *16 (D. Colo. Sept. 27, 2019) (finding the forced labor provision of § 1589(b) does not "require[] the party to benefit from the [forced] labor or services for liability to attach").

*2. Knew or should have known the venture was engaged in trafficking*

A defendant cannot be liable under 18 U.S.C. § 1595(a) unless it "knew or should have known" that the venture was engaged in sex trafficking. Several Defendants argue that Plaintiff's complaint should be dismissed because she has not alleged Defendants had actual knowledge of or recklessly disregarded H.H.'s trafficking. (ECF No. 21 at 10; ECF No. 30 at 7-8). As this Court held in its Order in *M.A.*, the plain text of § 1595(a) makes clear that the standard under this section is a negligence standard of constructive knowledge. 2019 WL 4929297 at *7.

Plaintiff's allegations against the individual hotel locations including the following:

- "Plaintiff was routinely escorted by her trafficker to the front desk to hand deliver cash payments for the reserved room out of which the sex trafficking venture operated." (ECF No. 1 at ¶ 46).
- "The indicia of human trafficking were open and obvious at the Defendant hotels and the Defendant hotels were willfully blind to the indicia of human trafficking." (ECF No. 1 at ¶ 46).
- Plaintiff "was discovered by hotel cleaning staff at the Defendant Motel 6 Columbus tied to the guest room bed and despite her desperate pleas for help, the staff ignored her." (ECF No. 1 at ¶ 47).
- "[A]t the Defendant Super 8 Columbus, a female member of the hotel housekeeping staff with long, dark hair discovered the Plaintiff chained up in the bathroom of the hotel room out of which she was being trafficked" and "despite the Plaintiff's desperate pleas for help, the staff person ignored her." (ECF No. 1 at ¶ 48).
- "On average, ten (10) to fifteen (15) "johns" would enter and leave the hotel room where the Plaintiff was trafficked on a daily basis." (ECF No. 1 at ¶ 49).

5

In addition to the above allegations, H.H. has alleged, generally against each defendant hotel chain that the chains "failed to take action to prevent sex trafficking" at their properties and their "inattention in this regard enabled and contributed to the sex trafficking." (ECF No. 1 at ¶ 51). Plaintiff also includes a number of allegations regarding online reviews that she alleges should have alerted Defendants to the prevalence of sex trafficking at its properties. (ECF No. 1 at ¶¶ 55, 109, 159-160).

This Court must decide whether these allegations are sufficient to state a claim that Defendants knew or should have known the venture was engaged in sex trafficking. This Court finds Plaintiff's allegations are sufficient to allege constructive knowledge. As this Court noted in *M.A.*, "[s]everal courts have found failure to implement policies sufficient to combat a known problem in one's operations can rise to the level of willful blindness or negligence." 2019 WL 4929297 at *6 (citing *Brown v. Corr. Corp. of Am.*, 603 F.Supp.2d 73, 81 (D.D.C. Mar. 26, 2009) (finding that complaint stated sufficient allegations under § 1983, based on willful blindness, where defendants knew that a supervisor at a correctional facility raped his employee, sexual harassment at the facility "was not an isolated incident," and defendants failed "to implement and effectuate the appropriate policies . . . to remedy and/or prevent the discriminatory conduct, sexual abuse and sexual harassment and rape"); *Trollinger v. Tyson Foods, Inc.*, 2007 WL 1574275, at *12 (E.D. Tenn. May 29, 2007) (finding that a "willful blindness policy" could be sufficient to show a RICO violation)). Here, H.H. has alleged that Defendants were on notice about the prevalence of sex trafficking generally at their hotels and failed to take adequate steps to train staff in order to prevent its occurrence. She also alleges facts specific to her own sex trafficking, including a number of signs she alleges should have alerted staff to her situation, and specific incidents in which hotel staff observed her abuse and

failed to report it. These allegations are sufficient to meet the negligence standard in § 1595 for purposes of surviving a 12(b)(6) Motion to Dismiss.

### 3. Participation in a venture

The last element requires the Court to decide whether Plaintiff alleged sufficient facts that show Defendants' conduct constituted "participation in venture" under § 1595(a). H.H.'s trafficker had a sex trafficking venture. The question is whether the Defendant hotels were participating in that venture through "consistently renting rooms where a trafficker repeatedly sold the Plaintiff for sex." (ECF No. 1 at ¶ 171).

Defendant Northland Hotel argues "these payments must necessarily flow from the hotel's participation in a venture with a captor of an individual." (ECF No. 19 at 7). Defendant Shahil relies on the definition of "participation in a venture" in § 1591, arguing that "participation in a venture" under § 1595 likewise requires knowledge that Defendants' actions would assist the perpetrator. (ECF No. 21 at 6-7). Plaintiff argues that Defendants inappropriately rely on § 1591 and criminal cases like *United States v. Afyare*, 632 F. App'x 272 (6th Cir. 2016), which differ from civil liability under § 1595. As this Court explained in *M.A*, Plaintiff's interpretation best comports with the plain text of § 1595. Section 1595 includes a constructive knowledge requirement, and "applying the definition of 'participation in a venture' provided for in § 1591(e) to the requirements under § 1595 would void the 'known or should have known' language of § 1595." 2019 WL 4929297 at *7. *See also Jean-Charles v. Perlitz*, 937 F.Supp.2d 276, 288–89 (D. Conn. 2013) (finding liability under § 1595 can attach when an individual participates in a venture that is not specifically a sex trafficking venture and participation is not direct participation in the sex trafficking).

7

This Court therefore found that "participation" under § 1595 does not require actual knowledge of participation in the sex trafficking itself. The Court must then examine whether there was "participation in a venture" here. Plaintiff's theory here is that the defendants "engag[ed] in acts and omissions that were intended to support, facilitate, harbor, and otherwise further the trafficker's sale and victimization of the Plaintiff for commercial sexual exploitation." (ECF No. 1 at ¶ 170). H.H. alleges that the hotels repeatedly rented rooms and thereby "participated in the trafficking." (*Id.* at ¶ 171). In the absence of a direct association, Plaintiff must allege at least a showing of a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement. *See, e.g.*, *In re Polyurethane Foam Antitrust Litigation*, 152 F. Supp. 3d 968, 983 (N.D. Ohio 2015) (citing *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 126 (3d Cir. 1999) (acknowledging that price-fixing can be shown be tacit agreement); *McGuire v. Lewis*, No. 1:12-cv-986, 2014 WL 1276168, at *6 (finding allegations sufficient "to identify the individuals alleged to have conspired, to plausibly suggest some joint action among the individuals, and to explain how the purported joint action led to the alleged deprivation of [plaintiff's] rights. In particular, they plausibly show a tacit agreement . . . ."). This requirement also comports with a principle implied in *Ricchio*. There, the First Circuit found sufficient allegations that, among other things, the trafficker and hotel owner had prior dealings. *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017).

Plaintiff argues that "Defendants knowingly continued to profit from the sex trafficking of the Plaintiff by harboring or otherwise facilitating the sex trafficking venture operation out of their hotels." (ECF No. 1 at ¶ 46). Defendants need not have actual knowledge of the sex trafficking in order to have participated in the sex trafficking venture for civil liability under the

8

TVPRA, otherwise the "should have known" language in § 1595(a) would be meaningless. This Court finds Plaintiff has alleged sufficient facts to show Defendants "participated in a venture" under § 1595 by alleging that Defendants rented rooms to people it knew or should have known were engaged in sex trafficking. These acts and omissions by Defendants, H.H. alleges, facilitated the sex trafficking venture.

### B. Protective Order

Defendants Northland Hotel and Shahil argue that the Complaint should be dismissed because Plaintiff filed pseudonymously. Plaintiff subsequently filed for a protective order in May 2019. (ECF No. 22). The parties then entered into a stipulated protective order in June, so the Court dismissed the original motion as moot. (ECF Nos. 36, 39). Defendant's argument regarding Plaintiff's failure to move for a protective order is therefore also moot.[2]

### C. Joint and Several Liability

Defendants Northland Hotel argues that Plaintiff's request that all Defendants be held jointly and severally liable is improper because they cannot be "responsible for acts occurring on properties not owned or managed by them." (ECF No. 19 at 15). Plaintiff has not addressed this argument. Therefore, this Court will consider Plaintiff to have conceded the point.

---

[2] The bulk of Defendant Northland's argument in this section focuses on Plaintiff's failure to identify herself by name, though they also briefly suggest Plaintiff's failure to identify her captor leaves them with "scarce information" to respond to the allegations. (ECF No. 19 at 2). However, the trafficker is not a party to the lawsuit, and the Court finds Plaintiff has alleged sufficient facts against the hotel Defendants to survive a Motion to Dismiss without identifying her trafficker by name. Defendants do not contest that Plaintiff was trafficked for sex. The question is whether Defendants participated in a venture in which they knew or should have known of her trafficking. Questions about the extent of their knowledge of the trafficker and the trafficking venture will be resolved in discovery and do not warrant dismissal at this stage.

## D. Vicarious Liability

Wyndham and G6 Hospitality suggest that they cannot be held liable as a single or joint employer "based solely on allegations that revert back to the franchise relationship." (ECF No. 30 at 2; ECF No. 29 at 2). This Court addressed those arguments in *M.A.*, noting that, when it comes to assessing vicarious liability, "the question is how much the agent 'retained control, or the right to control, the mode and manner of doing the work contracted for.'" 2019 WL 4929297 at *9 (quoting *Beddia v. Goodin*, 957 F.2d 254, 257 (6th Cir. 1992)). Likewise, "whether two employers are a joint employer often turns on how much control one exercises over the other." *Id.* at *10 (citing *Int'l Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk Southern Corp.*, 927 F.2d 900, 902 (6th Cir. 1991) (quoting *Metropolitan Detroit Bricklayers Dist. Council v. J.E. Hoetger & Co.*, 672 F.2d 580, 584 (6th Cir. 1982)) (articulating test for joint employer status under the NLRA as "the interrelation of operations between the companies, common management, centralized control of labor relations, and common ownership."); *Sanford v. Main Street Baptist Church Manor, Inc.*, 327 F. App'x 587, 594 (6th Cir. 2009) (quoting *United States EEOC v. Custom Companies,* Case Nos. 02 C 3768, 03 C 2293, 2007 WL 734395, at *5–8, 2007 U.S. Dist. LEXIS 16691, at *15–24 (N.D.Ill. March 8, 2007)) (adopting the test for Title VII joint employer status: "(1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work; (2) the kind of occupation and nature of skill required, including whether skills are obtained in the work place; (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations; (4) method and form of payment and benefits; and (5) length of job commitment and/or expectations.")).

Although Plaintiff's Complaint does contain mere legal conclusions such as "Defendant Motel 6 Columbus is an alter ego, representative, agent, or co-conspirator of Defendant G6," (ECF No. 1 at ¶ 113), she later details what aspects of the individual hotel locations G6 controlled: sharing profits, standardized employee training, building maintenance, "standardized or strict rules of operation," "regular inspection of Defendant Motel 6 Columbus and operation by Defendant G6," and prices fixed by G6. (ECF No. 1 at ¶ 118). H.H. makes similar allegations as to Wyndham. (ECF No. 1 at ¶ 166). These allegations are sufficient to meet the pleading standards of Rule 8. Likewise, H.H. alleges the individual hotel locations and their parent companies "share the common policies and practices" which establish a joint employment relationship. (ECF No. 1 at ¶ 115). Her facts supporting an agency relationship could plausibly show some element of control to establish joint employer status. Therefore, her allegations meet the pleading standard for the same reason.

### E. Group Pleading

Defendants Wyndham and G6 Hospitality argue that the Complaint impermissibly alleges facts against "Defendants" generally, without specifying which Defendant took which actions. (ECF No. 30 at 4; ECF No. 29 at 4). H.H. argues that much of the case law Defendants rely on with respect to "group" allegations pertain to the specialized fraud and § 1983 contexts. (ECF No. 37 at 23-24). Furthermore, H.H. argues that she has made claims specific to Wyndham and G6. (*Id.* at 26).

Federal Rule of Civil Procedure 8 requires a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the… claim is and the grounds upon which it rests." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v.*

*Gibson*, 355 U.S. 41, 47 (1957)). The impermissibility of "group pleading" is often spoken of in the fraud context because plaintiffs alleging fraud must meet the requirements set out in Federal Rule of Civil Procedure 9(b)—that is, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Fraud cases aside, however, G6 has argued that the Plaintiff's lack of specificity regarding G6's alleged actions has effectively deprived Wyndham of "fair notice of what it is alleged to have done." (ECF No. 29 at 3).

As this Court held in *M.A.*, Plaintiff has met her burden when she has "clearly named [Defendants] in her Complaint and made allegations specific to their failure to prevent her sex trafficking." 2019 WL 4929297 at *10. This Court agrees that H.H. has likewise pleaded allegations in the complaint contain sufficient specificity to address the notice concerns the Rule 8 is designed to protect.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are hereby **DENIED.**

**IT IS SO ORDERED.**

      s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATE: December 6, 2019**