# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

H.H.,

    **Plaintiff,**

    v.

                            **Civil Action 2:19-cv-755**
                            **Chief Judge Algenon L. Marbley**
                            **Magistrate Judge Elizabeth P. Deavers**

G6 HOSPITALITY, LLC, *et al.*,

    **Defendants.**

---

M.A.,

    **Plaintiff,**

    v.

                                **Civil Action 2:19-cv-849**
                            **Chief Judge Algenon L. Marbley**
                            **Magistrate Judge Elizabeth P. Deavers**

WYNDHAM HOTELS &
RESORTS, INC., *et al.*,

    **Defendants.**

## **OPINION AND ORDER**[1]

This matter is before the Court for consideration of Plaintiffs' Motion to Compel Defendant Wyndham Hotels & Resorts, Inc. to Produce Documents (Case No. 2:19-cv-755 ("*H.H.*"), ECF No. 148; Case No. 2:19-cv-849 ("*M.A.*"), ECF No. 246), a Motion jointly filed by

---

[1] This Opinion and Order notwithstanding, the Court is aware that the parties in *H.H.* have reached "a settlement in principle." (*H.H.*, ECF No. 183 at PAGEID # 2270.) Based on the parties' representations during the April 27, 2021 Status Conference, the Court expects that the *H.H.* parties will file dismissal papers in the coming weeks.

Plaintiffs in the above related cases.² This Motion has been fully briefed in each case and is ripe for decision. For the reasons stated herein, the Motion is **GRANTED**.

## I.

In September 2019, Plaintiffs served Wyndham with substantially identical requests for production and interrogatories. (*See H.H.*, ECF No. 148-13 (in *M.A.*); ECF No. 148-14 (in *H.H.*).)³ On April 30, 2020 Plaintiffs' counsel wrote Wyndham's counsel a letter to identify purported deficiencies in Wyndham's production. (ECF No. 148-2.) On May 22, 2020, Wyndham's counsel responded that "Plaintiff's Requests are overly broad, unduly burdensome, and not reasonably tailored or proportional to the needs of the case." (ECF No. 148-3.) Nevertheless, Wyndham offered some compromises and suggested that the parties meet and confer to discuss Wyndham's document production. (*Id.* at PAGEID # 1806.)

Between May 2020 and August 2020, the parties met and conferred on numerous occasions to attempt to resolve various discovery disputes. (*See* ECF No. 148 at PAGEID ## 1776-1779.) On August 25, 2020, the Court held a Status Conference to allow the parties to present their positions. (ECF No. 143.) During the Status Conference, Chief Judge Marbley and the Undersigned discussed at length the scope of permissible discovery, and by the end of the conference Chief Judge Marbley noted that "the process should be able to move along more expeditiously now that [the parties] know where Chief Magistrate Judge Deavers and I stand on some of these issues." (*Id.* at PAGEID # 1741.) The Court advised the parties to continue to meet and confer. (*Id.*)

---

² Plaintiffs in these related cases served identical discovery on Defendant Wyndham Hotels & Resorts, Inc. ("Wyndham"), so the legal issues arising from those discovery requests necessarily overlap. (*See H.H.*, ECF No. 148-13 (discovery requests in *M.A.*); ECF No. 148-14 (in *H.H.*).) The Court will enter this Opinion and Order in each case.

³ Unless noted otherwise, the Court will cite to documents as they appear on the *H.H.* docket.

The parties were unable to resolve their disputes. On October 7, 2020, this matter came before the Court again for a telephonic status conference. (ECF No. 147.) The parties indicated at that time that they had reached impasse with respect to two issues related to the scope of discovery and the timeframe going back from the relevant trafficking period for which Defendants must search and provide documents. (*Id.*) Accordingly, the Court set a briefing schedule for the subject Motion to Compel. (*Id.*) On October 21, 2020, Plaintiffs timely filed the subject Motion in both cases. (ECF No. 148; *see also M.A.*, ECF No. 246.) On November 4, 2020, Wyndham timely filed Opposition briefs. (*H.H.*, ECF No. 153; *M.A.*, ECF No. 252.) Also on November 4, 2020, Defendant Choice Hotels International, Inc. ("Choice") filed a Response to Plaintiff M.A.'s Motion to Compel. (*M.A.*, ECF No. 251.) On November 12, 2020, Plaintiffs filed Reply briefs. (*H.H.*, ECF No. 156; *M.A.*, ECF No. 253.)

## II.

"District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sol., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (citation omitted). "'It is well established that the scope of discovery is within the sound discretion of the trial court.'" *Id*. (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)). The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* While a plaintiff should "not be denied access to information necessary to establish her claim," a plaintiff may not be "permitted to 'go fishing' and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *In re Ohio Execution Protocol Litigation*, 845 F.3d 231, 236 (6th Cir. 2016) (citation omitted); *see also*

3

*Gallagher v. Anthony*, No. 16-cv-00284, 2016 WL 2997599, at *1 (N.D. Ohio May 24, 2016) ("[D]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce.").

Federal Rule of Civil Procedure 37 permits a party to file a motion for an order compelling discovery if another party fails to respond to discovery requests, provided that the motion to compel includes a certification that the movant has, in good faith, conferred or attempted to confer with the party failing to respond to the requests. Fed. R. Civ. P. 37(a)(1). The Court is satisfied that this prerequisite has been satisfied, as Plaintiffs have attached several exhibits documenting the extensive meet and confer correspondence between the parties.

Determining the scope of discovery is within the Court's discretion. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enter., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). If the movant makes this showing, "then the burden shifts to the non-movant to show that to produce the information would be unduly burdensome." *Prado v. Thomas*, No. 3:16-CV-306, 2017 WL 5151377, at *1 (S.D. Ohio Oct. 19, 2017) (citing *O'Malley v. NaphCare, Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015)); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (stating that a party claiming undue burden or expense "ordinarily has far better information—perhaps the only information—with respect to that part of the determination" and that a "party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them").

The Federal Rules of Civil Procedure grant parties the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ.

P. 26(b)(1); *see also Siriano v. Goodman Mfg. Co., L.P.*, No. 2:14-CV-1131, 2015 WL 8259548, at *5 (S.D. Ohio Dec. 9, 2015). "*Relevance* is construed very broadly for discovery purposes." *Doe v. Ohio State Univ.*, No. 2:16-CV-171, 2018 WL 1373868, at *2 (S.D. Ohio Mar. 19, 2018) (emphasis in original) (citations omitted). Despite being construed broadly, the concept of relevance is not unlimited. *Averett v. Honda of Am. Mfg., Inc.*, No. 2:07-cv-1167, 2009 WL 799638, at *2 (S.D. Ohio March 24, 2009). Indeed, "[t]o satisfy the discoverability standard, the information sought must have more than minimal relevance to the claims or defenses." *Doe*, 2018 WL 1373868 at *2 (citations omitted). Furthermore, when information is "negligibly relevant [or] minimally important in resolving the issues," the standard has not been satisfied. *Id.* (citation omitted).

"[T]he Federal Rules of Civil Procedure instruct district courts to limit discovery where its 'burden or expense . . . outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.'" *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (quoting former Fed. R. Civ. P. 26(b)(2)(C)(iii)). This Court has previously held that "[t]hese factors are retained in revised Fed. R. Civ. P. 26(b)(1), reflecting 'their original place in defining the scope of discovery'" because "'restoring proportionality' is the touchstone of revised Rule 26(b)(1)'s scope of discovery provisions." *Siriano*, 2015 WL 8259548, at *5 (citing Fed. R. Civ. P. 26(b)(1)). In analyzing the extent of the burden on the producing party, the Court of Appeals for the Sixth Circuit "has held that limiting the scope of discovery is appropriate when compliance 'would prove *unduly* burdensome,' not merely expensive or time-consuming." *Id.* at *6 (citing *Surles*, 575 F.3d at 305) (emphasis in original).

5

# III.

Applying the foregoing authority, the Court now considers Plaintiffs' Motion to Compel Defendant Wyndham Hotels & Resorts, Inc. to Produce Documents. (ECF No. 148.) Although pursuing separate claims in different cases, the two moving Plaintiffs seek identical relief:

> Plaintiffs seek an order that:
> 1) Plaintiffs may discover what Wyndham knew "generally" about human trafficking, and the scope of relevant discovery is not limited to what Wyndham knew "specifically" at the specific hotels where these particular plaintiffs were trafficked.
> 2) That Wyndham must search for relevant documents in possession of Wyndham Corporate, Days Inn Corporate (for M.A.), and Super 8 Corporate (for H.H.);
> 3) That Wyndham's search obligations are:
>    a) For most requests for production, from five years prior to the start of the alleged trafficking period in each case up through the end of 2015, which is the end of a trafficking period in both the M.A. and H.H. cases;
>    b) For any request that involves issues of the feasibility of taking steps to mitigate human trafficking, from five years prior to the start of the alleged trafficking period in each case up through the end of 2019;
>    c) For any requests that involves issues of Wyndham's control over its hotels generally, from five years prior to the start of the alleged trafficking period in each case up through the end of 2019; and
> 4) That Wyndham disclose the identities of Wyndham employees who are "most likely to possess ESI and hard copy documents" as requited in the ESI order. (See ECF No 162-3 at p. 12.).

(ECF No. 148 at PAGEID ## 1773-1774; *see also* ECF No. 156 at PAGEID # 2022.) The Court will address each of these requests in turn.

**1.      Plaintiffs may discover what Wyndham knew "generally" about human trafficking, and the scope of relevant discovery is not limited to what Wyndham knew "specifically" at the specific hotels where these particular Plaintiffs were trafficked.**

First, Plaintiffs seek an Order that they "may discover what Wyndham knew 'generally' about human trafficking, and the scope of relevant discovery is not limited to what Wyndham knew 'specifically' at the specific hotels where these particular plaintiffs were trafficked." (ECF

No. 148 at PAGEID ## 1773-1774; *see also* ECF No. 156 at PAGEID # 2022.)  In response, Wyndham represents that it "will diligently search for and produce documents relating to its general knowledge of and provision of training regarding human trafficking," so there is "[n]o remaining dispute."  (ECF No. 153 at PAGEID ## 2001-2003.)  In their Reply briefs, Plaintiffs submit that Wyndham "essentially concedes" to Plaintiffs' position.[4]  (ECF No. 156 at PAGEID ## 2023, 2029.)  This Court agrees that there appears to be no dispute, and Plaintiffs' Motion is therefore **GRANTED** on this issue.

2. **Wyndham must search for relevant documents in the possession of Wyndham Corporate, Days Inn Corporate (for M.A.), and Super 8 Corporate (for H.H.).**

Next, Plaintiffs request that Wyndham search three entities for relevant documents: (1) Wyndham's corporate office; (2) the corporate office of Days Inn; and (3) the corporate office of Super 8.  (*See, e.g.*, ECF No. 148 at PAGEID # 1787.)  Plaintiffs argue that "[t]his is proportionate because Wyndham is the defendant, and should (obviously) have to search its own corporate records, and Days Inn and Super 8 are the brand's wholly owned subsidiaries, where plaintiffs were trafficked, so they are likely to have highly probative material."  (*Id.*)

---

[4] During the August 25, 2020 Status Conference, the Court commented that "these are the types of things that we are expecting counsel to meet and confer more thoroughly before coming to the Court with all of these issues."  (ECF No. 143 at PAGEID # 1736.)  The Court stands by this statement.  While it is always encouraging for parties to resolve disputes without Court intervention, the Court is perplexed as to why Wyndham only "concede[d]" to multiple of Plaintiffs' discovery requests *after* Plaintiffs filed the subject Motion to Compel.  As the extensive correspondence indicates, Wyndham surely was aware of Plaintiffs' positions on these issues before Plaintiffs filed the subject Motion to Compel, yet Wyndham did not agree to certain of Plaintiffs' requests until after Plaintiffs had exerted considerable time and resources filing the subject Motion to Compel.

As all involved are well aware, the purpose of having the parties meet and confer in good faith is to avoid unnecessary delays, prevent unnecessary contention between the parties, and to preserve the resources of the parties and of the Court.  While the Court will not consider whether Wyndham failed to meet and confer in good faith as to the issues to which Wyndham no longer objects, the Court expects the parties to be at a genuine impasse should the Court be asked to resolve any future disputes.

In response, Wyndham argues that its franchisor subsidiaries "have entered into franchise agreements with more than 9,000 independently owned and operated franchised hotels, globally, and more than 6,000 in the United States." Wyndham explains that "Plaintiff's effort to compare 9,000 entities to three made throughout Plaintiff's Motion is not correct." (ECF No. 153 at PAGEID ## 2000-2001.) Regardless, Wyndham submits that it "has produced and continues to diligently search for and produce 'corporate' documents – *i.e.*, documents that relate to WHRI, Super 8®, and/or DIW." (*Id.* at PAGEID # 2001.) Wyndham continues that it "will diligently search for and produce documents from the [] franchised hotels located within the State of Ohio," so the only remaining dispute is "[w]hether [Wyndham] must search for and produce responsive documents from approximately 2,900 Days Inn® and Super 8® franchises in the United States." (*Id.* at PAGEID # 2003.) To that end, Wyndham argues that "any potential benefit to Plaintiff that could be derived by the production of guest complaints from approximately 2,900 Super 8® and Days Inn® franchises throughout the United States and/or producing documents post-2015 is significantly outweighed by the burdens of harvesting, reviewing, and producing such information." (*Id.* at PAGEID # 2004.) In Reply, Plaintiffs argue that Plaintiffs have "created a straw man" and/or a "boogeyman that has nothing to do with what Plaintiffs are currently seeking." (ECF No. 156 at PAGEID ## 2024-2025.)

The Court agrees with Plaintiffs. Having agreed that Plaintiffs are entitled to discover documents that relate to what it knew "generally" about human trafficking, Wyndham has failed to demonstrate that it would be unduly burdensome or disproportionate to the needs of the case to allow Plaintiffs to discover documents from three corporate entities. Despite Wyndham's efforts to present Plaintiffs' request as misleading, the Court finds that it is Wyndham which is trying to frame Plaintiffs' request as more than it is. The fact that there are approximately 2,900

8

Super 8 and Days Inn franchises in the United States does not mean that Plaintiffs seek documents from each one. Instead, Plaintiffs have clearly articulated that they "seek records from Wyndham's corporate offices (and from Days Inn® and Super 8®) that indicate what employees, managers, and officers of Wyndham knew or should have known about human trafficking." (*See* ECF No. 156 at PAGEID # 2024.) This has been Plaintiffs' consistent position since June 12, 2020,[5] and the Court advised Wyndham during the August 25, 2020 Status Conference that what was communicated to its corporate offices is relevant in discovery:

> CHIEF JUDGE MARBLEY: Now, I think that we can get through this. You're right, Mr. Sager, the plaintiffs aren't entitled to everything from every Days Inn for eternity, okay? You're right about that. I don't think that Mr. Tisi expects that. Maybe he does, but, if so, he's wrong about that. But you have to know, Mr. Sager, that if they asked for policies that Wyndham as the parent promulgated to its franchisees like you must have a sign that's X dimension that has X lettering on it in order to comply with the franchise agreement, you have that. But you also might have some policies about how to prevent sex trafficking, how to recognize it that you sent down to your various franchisees. I don't know. That's the purpose of discovery.
>
> * * *
>
> See, if somebody has an unpleasant experience at a hotel, that may or may not violate a federal law. But, if somebody sees -- if somebody advises the parent that I think there's a prostitution ring or human trafficking going on, and they call

---

[5] *See, e.g.,* ECF No. 148-4 at PAGEID # 1810 (June 12, 2020 letter) ("[W]e will agree to limit our request to responsive documents in the possession of Wyndham (WHRI) corporate and Days Inn International which are common to both M.A. and H.H. In addition, for the H.H. case, we would request documents in the possession of Super 8."); ECF No. 148-6 at PAGEID # 1816 (June 30, 2020 letter) ("[Y]our letter dated June 24, 2020 does not appear to reject our proposed scope limitations to Wyndham corporate, Days Inn Worldwide and Super 8 Worldwide. Therefore, we presume you are in agreement with our proposal and appreciate your cooperation on that issue."); ECF No. 148-9 at PAGEID # 1826 (August 11, 2020 letter); ECF No. 148-11 at PAGEID # 1840 (August 17, 2020 letter) ("To be clear: Plaintiffs agreed to limit their requests to Wyndham Corporate (for both cases) and, in addition, the Days Inn Brand, *i.e.*, the Days Inn Division, since M.A. was trafficked at Days Inn Hotels and the Super 8 Brand, *i.e.* the Super 8 Division, since H.H. was trafficked at the Super 8 hotel."); ECF No. 143 at PAGEID # 1718 (August 25, 2020 Status Conference) ("So, when we originally made our request, we were unaware that they could be interpreted as requiring them to go to nine thousand individually owned properties. We heard them on that, and we've agreed for months that that would be -- we could narrow it from nine thousand to two per case.").)

9

corporate, and then corporate has its fine lawyer, Mr. Sager, who knows about the TVPRA and says, you know what, that is a violation of federal law and perhaps we need to promulgate a policy across -- to all of our franchisees that you need to look for A, B, C and D so we don't violate federal law.

There is not a federal law that says, yes, they're entitled to a pleasant stay and, yes, they're entitled to not have the family next door making noise after ten o'clock. So you're right. You would say, well, look, tell the franchisee in Columbus that they've got to do something about the unwanted noise. But when your client is maybe unwittingly a party to a violation of federal law, that may or may not cause you to enact certain systemwide policies. **That's why what happened in Zanesville, communicated to corporate that may be a violation of federal law is relevant in discovery.**

(ECF No. 143 at PAGEID ## 1715, 1725-1726 (emphasis added).) For this reason, the Court rejects Wyndham's argument that the scope of Plaintiffs' proposed discovery exceeds what could be reasonably relevant. (*See, e.g.,* ECF No. 153 at PAGEID ## 2005-2008.)

The Court also rejects Wyndham's argument regarding the burden of production, since Plaintiffs are only concerned about complaints regarding human trafficking, as established at the August 25, 2020 Status Conference:

CHIEF MAGISTRATE JUDGE DEAVERS: To be clear, if we do brief this, I want to emphasize that as I understand it, **we're not talking about all six thousand franchisees anymore. We're talking about two brands and the Wyndham corporate. We're talking about Super 8 and Days Inn. The burden would be different, and the proportionality response or the argument is also different if we're talking about just these two brands and Wyndham generally.**

[COUNSEL FOR WYNDHAM]: **I think that's correct.** And I think the number -- I will provide the number to plaintiffs or the Court. I don't know if the number is a thousand or 1,500. It's different for every defendant in this case. The burden, though -- when Mr. Tisi says other Wyndham brands or Your Honor says other -- Wyndham corporate, the Wyndham discusses in great detail the Case Details Reports that are available for each definition in the discovery would encompass every one of 18 brands. So you are correct, Your Honor. **If we are limiting it to two brands, it is less. But I would suggest to Your Honor that it's still quite burdensome, and I do appreciate the distinction you're making.**

CHIEF JUDGE MARBLEY: And I will add that that -- Judge Deavers read it correctly. That is the distinction. But, you know, again, **I don't think that anyone is talking about all of the -- all criminal complaints or all complaints made about everything across those brands. I think that the question was about sex trafficking.**

> [COUNSEL FOR PLAINTIFFS]: Yes, Your Honor. That is -- that is correct, and human trafficking at the hotels. This is Chris Tisi. **We've always been limited to that. I don't care about loud kids in the hallway or bedbugs. That's just not what we're interested in.**
>
> [COUNSEL FOR WYNDHAM]: **That's actually very helpful** because the term of art was suspicious activity which had dishonest, illegal or criminal activities. So that's helpful.

(ECF No. 143 at PAGEID ## 1733-1734 (emphasis added).) Notwithstanding the above "very helpful" discussion, Wyndham now suggests that Plaintiffs request "the production of [all] guest complaints from approximately 2,900 Super 8® and Days Inn® franchises throughout the United States." (ECF No. 153 at PAGEID # 2004.) Consistent with this misrepresentation, Wyndham analyzed the burden of producing *full* Case Details Reports – which by Wyndham's admission would include minor things such as "leaky faucets" – for every Days Inn and Super 8 hotel in the country. (*Id.* at PAGEID ## 2008-2011.) If that were Plaintiffs' request, Wyndham is likely correct that it would be outside the bounds of discovery in this case. But that is nowhere close to what Plaintiffs seek, as was understood by all at the August 25, 2020 Status Conference.

For this reason, the Declaration of Michael Mahar, *see* ECF No. 153-1, is irrelevant to the Court's analysis. While Mr. Mahar's Declaration sets forth how burdensome it would be to produce full Case Details Reports (which are "not limited to any particular type of report or complaint") for each of Wyndham's branded hotels, this was not Plaintiff's request. (ECF No. 153-1.) Additionally, although Mr. Mahar states that "[m]y team can apply filters to the database, but the output . . . would not be in a form that reflects the data as it is displayed and used in the ordinary course of business," Wyndham has failed to demonstrate why such filtered results would not show "what employees, managers, and officers of Wyndham knew or should have known about human trafficking," which was Plaintiffs' request. (*See* ECF No. 156 at PAGEID # 2024.) Just because Wyndham's employees, managers, and officers may have

11

reviewed the information in a different (i.e., unfiltered) form, that does not mean that Plaintiffs are not entitled to review this information. It is not an all-or-nothing (or unfiltered-or-nothing) proposition, and Mr. Mahar's declaration is silent as to the burden of producing the filtered information requested by Plaintiffs. In short, while Plaintiffs have met their burden of showing that the request is relevant, Wyndham has failed to meet its burden of showing how Plaintiffs' request is unduly burdensome. *Prado*, 2017 WL 5151377, at *1.

For the above reasons, Plaintiffs' Motion is therefore **GRANTED** on this issue. The Court **ORDERS** that Wyndham must search for relevant documents in the possession of Wyndham Corporate, Days Inn Corporate (for M.A.), and Super 8 Corporate (for H.H.).

**3.    Wyndham's search obligations.**

**a.    Time period.**

Plaintiffs also seek an Order that Wyndham's search obligations are "[f]or most requests for production, from five years prior to the start of the alleged trafficking period in each case up through the end of 2015, which is the end of a trafficking period in both the M.A. and H.H. cases." (ECF No. 148 at PAGEID ## 1773.) In response, Wyndham affirmatively notes that it is "willing to agree to produce documents beginning in 2010, *i.e.*, five years prior to the period of the alleged trafficking, and concluding with the end of the alleged trafficking in 2015[.]" (ECF No. 153 at PAGEID # 2000.) Thus, there appears to be no dispute, and Plaintiffs' Motion is therefore **GRANTED** on this issue.

**b.    Issues of feasibility and control.**

Plaintiffs also seek an Order that Wyndham must search from five years prior to the start of the alleged trafficking period in each case up through the end of 2019, for any request that involves issues of the feasibility of taking steps to mitigate human trafficking or Wyndham's control over its hotels generally. (ECF No. 148 at PAGEID ## 1773-1774.) Specifically,

Plaintiffs confirm (and Wyndham appears to understand) that this time frame shall only apply to Request for Production Nos. 2, 4-7, 10, 13, 25, 28, 38, 39, and 42. (*See id.* at PAGEID # 1777; ECF No. 153 at PAGEID # 2003; ECF No. 156 at PAGEID ## 2023-2024; *see also* ECF No. 148-4 at PAGEID # 1810.) In support, Plaintiffs argue that such a time frame for these requests is "reasonable because one of Defendants' key defenses is the argument that they were unable to alter conduct on the ground at their hotels," and "Plaintiffs should be permitted to discover more recent documents to ascertain whether this is true." (ECF No. 148 at PAGEID # 1788.)

In Wyndham's nineteen (19) page response to the Motion to Compel, Wyndham devotes only two sentences to this issue, summarily stating that "the burdens associated with requiring WHRI to produce documents post-dating the alleged trafficking period outweigh any potential 'de minimis' relevancy such information might have in this case" and "[r]equiring WHRI to harvest, review, and produce information for an additional four years would exponentially compound the burdens placed on WHRI, with little if any benefit to Plaintiff." (ECF No. 153 at PAGEID # 2011.)[6] In Reply, Plaintiffs reject this as a "throwaway argument" and urge that "subsequent remedial measures are relevant, probative, and admissible because control is an issue in this case" and "[e]ven if the measures were not admissible (which they are), they would still be discoverable." (ECF No. 156 at PAGEID # 2026.)

---

[6] Wyndham also states, in a footnote, that Plaintiffs "ha[ve] not established that feasibility as to any particular mitigation measure is even at issue," and argues that "Plaintiff should not be able to point to the *potential* for issues arising around feasibility to conduct a burdensome and far-reaching fishing expedition." (ECF No. 153 at PAGEID # 2008, n. 4 (emphasis in original).) The Court disagrees with this framing, finds that Plaintiffs have demonstrated that the issue of feasibility is at issue, and rejects Wyndham's attempt to postpone discussion of the subject requests until further disputes materialize. While Wyndham's footnote is vague, the Court hopes that Wyndham is not suggesting that it is already planning to continue litigating the discoverability of documents relating to the feasibility of its ability to take steps to mitigate human trafficking.

13

The Court agrees with Plaintiffs that "[b]y repeatedly asserting lack of control over its hotels and its supposed inability to combat trafficking, Wyndham has made the steps it took to curb trafficking after 2015" relevant and probative. (ECF No. 156 at PAGEID # 2027.) To the extent Wyndham believes that such discovery will not be admissible under Federal Rule of Evidence 407, that issue will need to be briefed at a later date, as "[t]he scope of discovery is significantly more vast than the limitations set forth in the evidentiary rules, including Rule 407." *Terrell v. Uniscribe Pro. Servs., Inc.*, No. 1:04 CV 1288, 2005 WL 8166275, at *3 (N.D. Ohio Nov. 22, 2005); *see also* Fed. R. Civ. P. 26(b)(1) ("Information within [the] scope of discovery need not be admissible in evidence to be discoverable.").

Here, the requested production is directly relevant to at least part of Wyndham's theory of the case. Moreover, Wyndham provides no argument or evidence regarding the burden of such production. Instead, Wyndham relies on its argument regarding the second issue discussed above, which the Court has rejected. The Court therefore finds that it would not be unduly burdensome for Wyndham to extend its search through 2019 for the twelve (12) of Plaintiffs' Requests for Production at issue.

For the above reasons, Plaintiffs' Motion is therefore **GRANTED** on this issue. The Court **ORDERS** that Wyndham must search from five years prior to the start of the alleged trafficking period in each case up through the end of 2019, for any request that involves issues of the feasibility of taking steps to mitigate human trafficking or Wyndham's control over its hotels generally – specifically, Request for Production Nos. 2, 4-7, 10, 13, 25, 28, 38, 39, and 42.

4. **Wyndham must disclose the identities of Wyndham employees who are "most likely to possess ESI and hard copy documents."**

Finally, Plaintiffs seek an Order that Wyndham must "disclose the identities of Wyndham employees who are 'most likely to possess ESI and hard copy documents' as requited in the ESI

14

order[.]"  (ECF No. 148 at PAGEID ## 1773-1774.)  In response, Wyndham affirmatively notes that it "has identified the six employees most likely to possess relevant documents and ESI," and that there is "[n]o issue in dispute."  (ECF No. 153 at PAGEID # 2003.)  In their Reply brief, Plaintiffs agree that "no present dispute remains between Plaintiffs and Wyndham on this point."[7]  (ECF No. 156 at PAGEID 2021.)  Thus, there appears to be no dispute at this time, and Plaintiffs' Motion is therefore **GRANTED** on this issue.

5. **Choice, as a third party to the subject dispute, does not have standing to oppose the Motion to Compel.**

Separately, Defendant Choice also filed a "limited response" to Plaintiffs' Motion to Compel in the *M.A.* case.  (*M.A.*, ECF No. 251.)  Choice generally argues that although the Motion to Compel is "premature and inapplicable as to Choice," Choice "seeks to have the Court enforce the ESI Order as written as opposed to offering Plaintiff the generalized advisory guidance they seek."  (*Id.* at PAGEID # 3301.)

By Choice's own admission, however, "Plaintiff does not include all Defendants in their Motion and therefore Choice would be guessing as to how Plaintiff intends to proceed against it on these or similar issues."  (*Id.* at PAGEID # 3303.)  It therefore appears to the Court that Choice's limited response was intended to confirm that the subject Opinion and Order will not be used as a sword by Plaintiffs in any future discovery disputes in these related cases.  (*Id.* at PAGEID # 3303-3304, n. 3 ("In submitting this Limited Response, Choice desires to prevent this Court from entering general orders on discovery issues that may be impossible or difficult with which to comply and which Plaintiff could argue have application beyond Plaintiff's dispute with Wyndham.").)

---

[7] Plaintiffs also noted, however, that they "reserve the right to revisit this issue if necessary as the case develops."  (ECF No. 156 at PAGEID # 2021.)

15

As it relates to the substance of the subject Motion to Compel, Choice's response is not well taken. As Choice freely admits, it has no interest in the subject Motion to Compel. Nevertheless, Choice's general concern is well taken. For the sake of clarity the Court **ORDERS** that this Opinion and Order is limited **ONLY** to the subject discovery disputes between Plaintiffs and Wyndham.

## IV.

For the foregoing reasons, Plaintiffs' Motion to Compel Defendant Wyndham Hotels & Resorts, Inc. to Produce Documents (*H.H.*, ECF No. 148; *M.A.*, ECF No. 246) is **GRANTED**. The Court **ORDERS** as follows to the extent that the disputes still remain:

1) Plaintiffs may discover what Wyndham knew "generally" about human trafficking, and the scope of relevant discovery is not limited to what Wyndham knew "specifically" at the specific hotels where these particular plaintiffs were trafficked.

2) That Wyndham must search for relevant documents in possession of Wyndham Corporate, Days Inn Corporate (for *M.A.*), and Super 8 Corporate (for *H.H.*);

3) That Wyndham's search obligations are:

   a) For most requests for production, from five years prior to the start of the alleged trafficking period in each case up through the end of 2015, which is the end of a trafficking period in both the *M.A.* and *H.H.* cases;

   b) For any request that involves issues of the feasibility of taking steps to mitigate human trafficking, from five years prior to the start of the alleged trafficking period in each case up through the end of 2019;

      c)     For any requests that involves issues of Wyndham's control over its hotels generally, from five years prior to the start of the alleged trafficking period in each case up through the end of 2019; and

4)     That Wyndham disclose the identities of Wyndham employees who are "most likely to possess ESI and hard copy documents" as requited in the ESI order. (*See M.A.*, ECF No 162-3 at p. 12.).

This Opinion and Order is limited only to the subject discovery disputes between Plaintiffs and Wyndham.

    **IT IS SO ORDERED**.


**Date: April 30, 2021**                                  */s/ Elizabeth A. Preston Deavers*
                                                               **ELIZABETH A. PRESTON DEAVERS**
                                                               **UNITED STATES MAGISTRATE JUDGE**